[Civ. No. 15268. Second Dist., Div. Three. Aug. 1, 1946.]

OLIVE DEL RUTH, Appellant, v. THOMAS LEROY DEL RUTH, Respondent.

John W. Preston for Appellant.

Wright & Millikan and Herschel B. Green for Respondent.

SHINN, J.—Appeal by plaintiff from a judgment which denied her separate maintenance and awarded defendant a divorce upon his cross-complaint. Plaintiff brought her action for separate maintenance, charging defendant with extreme cruelty. Defendant answered and filed a cross-complaint for divorce, charging plaintiff with extreme cruelty. The allegations of both parties were in general terms without specification of particular acts. The parties intermarried March 14, 1921, and have one child, a son, of the age of 21 years. They separated in July, 1944. Plaintiff is employed as a motion picture director at a salary of $1,750 per week. The parties were possessed of community property of substantial value. Defendant was called as a witness under section 2055 of the Code of Civil Procedure on March 14, 1945. After he had

been examined as to his property he was asked to state the particulars of the acts and conduct of plaintiff which were claimed to constitute her wrongful conduct. The court thereupon stated, ''Not for 20 years, when did the marriage begin? . . . Well, I say there is no need to start out with the marriage and recite their squabbles for the past 24 years.'' Then occurred the following: ''MR. CRUMP [one of plaintiff's attorneys] : It seems so to me, but if your Honor will indicate how far back we can go. THE COURT: Oh, two or three years. MR. CRUMP: I suppose that applies to both sides? THE COURT: Oh, yes. MR. CRUMP: Then we will start in say in 1941.'' The record shows that although plaintiff's attorneys proceeded as the court directed, they declined to stipulate or consent to the ruling made shortly thereafter which excluded evidence of defendant's conduct prior to 1941. Defendant's counsel insisted that defendant should be allowed to prove plaintiff's conduct over a period of the last 12 to 15 years, his position being that there had been misconduct extending over that period, and the court stated: ''It would seem to me many of those have been condoned by subsequent treatment.'' After discussion the court said further: ''The Court wants to get this case in a place where we can try it in a reasonable time. There is no need of listening to acts of cruelty for twelve years on either side, all the details of these things, we would be here for three weeks, and there are others waiting for the services of the Court. . . . I think we ought to get some pleadings.'' A plan was agreed upon for each side to specify the acts of cruelty relied upon, for in that manner, the court said, ''We could work out some method by which we could take up some of the high lights and let the details be dissolved in the background.'' And later, ''I want some allegations to which testimony may be directed.'' And further, ''I need some statement of facts which you expect to prove. . . . A bill of particulars, just setting forth the particulars in which the cross-complainant complains, recite them, you can put it in as an amendment to your cross-complaint.'' The parties prepared specifications of the acts of cruelty which they proposed to prove. Plaintiff's specifications were 14 in number. The court of its own motion selected five of these, as to which he would take evidence, and excluded the others, and likewise rejected about half of defendant's 25 specifications. The court further of its own motion made an order that all testimony relating

to acts of cruelty on either side would be strictly limited to a period beginning January 1, 1941, and ending with the date of separation.

The five specifications of cruelty as to which plaintiff was allowed to offer evidence were that defendant called her vile names; that he spent his evenings away from home and when home shut himself in a room and refused to have anything to do with plaintiff; that many times he repulsed plaintiff when she went to his room and attempted to be affectionate with him, and that in 1941 or 1942, in the presence of plaintiff's mother, he spat in her face. Among the allegations excluded were those of an association between defendant and an actress in 1929 which, plaintiff alleged, caused comment among their friends, and which resulted in a suit by the husband of the actress against defendant, charging alienation of affections, which suit was the subject of newspaper articles and gossip which came to plaintiff's attention. Also excluded were allegations that defendant purchased large quantities of liquor for plaintiff, urged her to drink, urged her to go out socially with men as well as women, and at the same time was employing detectives for the purpose of entrapping her in misconduct; that at a time when plaintiff was pregnant defendant struck her a hard blow on the abdomen with his fist; that in 1933 he hit her in the eye with his fist, giving her a black eye, and in 1933 or 1934, in the home, threw a glassful of water in plaintiff's face; that in 1940, in the home, defendant, while angry, threw a glassful of water at a mirror, breaking the glass and shattering it over the floor. Among the specifications of cruelty charged by defendant, the court retained those charging plaintiff with great extravagance, with the purchase on charge accounts of some $800 worth of clothes on the date of the separation, which defendant paid for, and with the purchase a few days later of $1,100 worth of merchandise, which had not been paid for; that plaintiff was possessed of a violent and ungovernable temper; that for 9 years last past she had refused to maintain sexual relations with him; that for 9 years and longer she had displayed no affection for him or interest in him; that she frequently addressed toward him vulgar and profane language; that she took telephone calls from his business associates and refused to give them to him, with the result that he had to rent an office where he could receive telephone calls and conduct his business; that she

stayed in bed until late hours in the day, and at all times refused to do housework, even to making the beds when they could not be made by the servants; that she would habitually go shopping and not return for dinner until after defendant and his son had finished their dinner, and many times would not return for dinner at all; that she would not go to places of entertainment with defendant but would come home late at night, slam the doors, play the radio, turn on the lights, and that defendant was thereby compelled to take a separate bedroom, in which he had slept for the past 9 or 10 years; that plaintiff used intoxicating liquors to excess, criticized defendant's relatives, and that she cursed and abused defendant, and accused him of taking a picture of their son from her dressing table, although it had been taken by the son without defendant's knowledge. Excluded were allegations of the cross-complaint that plaintiff, between the years 1931 and 1936, associated with a male acquaintance at hotels, night clubs, Catalina Island, and the beaches, appearing with him in public at all times of the day and night, leaving her car parked in front of his apartment house, and further allegations that defendant upon returning from Palm Springs one night in 1931, went into the apartment of plaintiff's male friend and found the two there completely undressed. There were also allegations of an automobile accident suffered by plaintiff when she had been at a party with the same man and was driving her automobile while intoxicated, as a result of which accident she was confined to the hospital for several months. There were also allegations concerning her difficulties with the nurses, her infatuation for her doctor, and her attacking a maid in their home for making a mistake, in which attack it was alleged she broke the maid's glasses, causing her to lose the sight of her eye, for which defendant paid $1,500 in settlement of the maid's claim for damages, which sum included his own attorney's fees. Other specifications of plaintiff's alleged misconduct which were rejected did not differ materially from those as to which evidence was received.

During the examination of defendant under section 2055, plaintiff's counsel produced a letter dated April 13, 1944, written to defendant by his niece. The letter said, in part: "Roy, I am so very happy over the grand news about you and ————. I am so anxious to meet her and I know I will love her, as she looks like such an understanding and gifted girl. She

is what you should have had many years ago. I guess if we all could live our lives over again we sure would do differently, because that is the only way we can get a contrast, a little bitter with the sweet. I am looking forward to you, Mother and Dad and bring ——— with you some Sat. or Sunday for dinner,'' etc. The name in the letter was the same as that of the first name of the actress with whom defendant was alleged to have associated, as heretofore stated. Upon defendant's objection, the court excluded the letter from evidence upon the ground that it had a connection with the former association of defendant with the actress who had the same first name, and that evidence of such association and all matters connected with it had been excluded under the previous ruling. It was neither stated nor admitted that the woman named in the letter was the one who was involved in the earlier incidents. Plaintiff made an offer to prove that she found the letter in the mail box, opened it, placed it upon defendant's desk and questioned him about it, and that the incident was one that she could not get out of her mind; that it caused her grief and illness. The offer of proof was rejected by the court and no further evidence was received concerning the letter.

Evidence was received under the specifications of cruelty as limited by the court. The court made the following findings:

''III. It is not true that the defendant and cross-complainant has treated the plaintiff and cross-defendant in a cruel or inhuman manner or that he caused her to suffer great or any humiliation or embarrassment or mental anguish or that he caused her health to become impaired.

''IV. It is true and the Court finds that the cross-defendant, Olive Del Ruth, has wrongfully inflicted upon the cross-complainant, Thomas Leroy Del Ruth, grievous mental suffering and because thereof, it is impossible for the parties to live together as husband and wife.''

A decree of divorce was awarded defendant and a division of the community property was ordered, under which plaintiff would receive money and property of the value of about $75,000 but no other support, and the defendant about one-third of that sum. ■ It is contended by plaintiff that there was insufficient evidence to support the finding that she had wrongfully inflicted upon defendant grievous mental suffering. Although defendant's testimony as to all but a few

instances of plaintiff's misconduct was without direct corroboration, it was corroborated with respect to plaintiff's extravagant habits and the use by her toward defendant of profane and vulgar language, the text of which may well be omitted. It is enough to say that we find no insufficiency of evidence to support the finding of cruelty on the part of plaintiff.

 The findings which we have quoted are claimed to be insufficient because they fail to cover the specific allegations of cruelty which were added by means of the specifications made at the request of the court. It is argued that these specifications amounted to amendments of the pleadings and that specific findings were required. If objection had been made by plaintiff to the general finding, or if she had requested specific findings as to her own conduct, and that of defendant, the point would be well taken. (*Bilger* v. *Bilger,* 54 Cal.App. 2d 739 [129 P.2d 752] ; *Franklin* v. *Franklin,* 140 Cal. 607 [74 P. 155] ; *Smith* v. *Smith,* 62 Cal. 466.) From the finding that plaintiff had been guilty of cruelty, it cannot be determined what alleged conduct on her part had been proved, and what had not been proved. Nor can it be determined from the finding that defendant has not treated plaintiff in a cruel or inhuman manner, whether he was found guiltless of the acts charged or whether the court believed that such acts, if proved, were not wrongful, or did not cause plaintiff physical or mental suffering. Although the evidence cannot be held insufficient to support a general finding if it was sufficient to prove any one of the charges of cruelty, in a contested case the findings as to alleged cruelty should be specific where the allegations of the pleadings are specific. If special findings are requested, it would be error for the court to refuse them, but if no special findings are requested and no objection is made to a proposed general finding, the only objection to such general finding which can be raised later is that it is insufficient to support the judgment. The findings criticized were not mere conclusions of law; they were findings of ultimate fact and were sufficient to support the judgment. (*Ungemach* v. *Ungemach,* 61 Cal.App.2d 29, 40 [142 P.2d 99].) Plaintiff had an opportunity to object to the general findings and to demand special findings. Section 634 of the Code of Civil Procedure requires that proposed findings be served and that no findings be signed until the expiration of 5 days

after such service. The purpose of the requirement is to afford the opposing party an opportunity to object to the form or substance of the proposed findings and to propose other findings. The opportunity thus afforded gives rise to a duty to make objection, and if none be made, the right to object must be deemed to have been waived. Plaintiff's attorneys not only did not object to the proposed general findings, but they also signed a written waiver of the 5-day period allowed for objection by section 634 and consented "that said findings may be signed forthwith." In divorce cases findings may be waived by the parties as in other cases. (*Waldecker* v. *Waldecker*, 178 Cal. 566 [174 P. 36].) ██ If there may be a valid waiver of findings, there may be a valid waiver of special findings, and we think that here the findings of cruelty may not be questioned on appeal on the ground of error because they were not specific. The general rule is stated in 2 California Jurisprudence, page 248, section 74: "It is a well settled rule that a party cannot urge, for the first time on appeal, objections which could have been obviated if made in the court below. This doctrine is founded partly upon a sort of estoppel, for where the objection is one which could, if made in the court below, have been obviated, it would be clearly unjust for a party to withhold his objection until his appeal, when it is too late to correct the defect." The rule is sustained by many authorities cited in support of the text.

██ There were charges of serious misconduct on the part of defendant prior to January 1, 1941, and also charges of cruelty subsequent to that date, which were arbitrarily eliminated from the case by the rulings of the court. The implications in the letter from defendant's niece were calculated to seriously disturb plaintiff and to aggravate the dissension that already existed. They disclosed that defendant was contemplating divorcing plaintiff, which defendant in his testimony admitted to be the fact. They called for an explanation by defendant. The letter should have been received in evidence, plaintiff should have been allowed to testify as to her conversations with defendant concerning it, and also as to whether the incident had occasioned her any mental distress. In explaining his ruling, the trial judge said: "The thought in the mind of the Court at the time and now is that by that method we eliminate any possibility of some other woman in the case, so far as the defendant is concerned, and

to eliminate that part of the case which related to some alleged indiscretion on the part of the plaintiff when she was followed by a detective and found naked in a room with this man ———. I thought it was in the interest of good morals and possibly simplifying this procedure not to have that sort of thing taken up by either side of the case. That was one of the purposes that I felt we had accomplished, and it was a very fair proposition, equally fair to each side, to eliminate those things that might embarrass them or might embarrass their son. I believe in so many cases of domestic difficulty, divorce or separate maintenance, innocent children are made to suffer for the sins of the parents, and I think that is one of the principal considerations we must have in mind in handling of these domestic problems." With due respect for the motives of the trial judge, we think he carried his sympathy and altruism too far for the good of the lawsuit. From a perusal of the record as to the domestic life of these parties, which was a matter of daily observation by the 21-year-old son, who resided with them, we feel that any effort made at the time of the trial to spare the parties or their son embarrassment came far too late. It was the duty of the judge to try the lawsuit, and nothing which would have aided him materially in arriving at the facts of the case should have been omitted in order to save the feelings of the parties. They made no complaint of embarrassment. A trial of this sort is not an arbitration; it is an inquiry for the determination of matters of fact. However distressing and regrettable it may be to have to take evidence as to charges of infidelity, disloyalty, acts of physical violence, name calling, and the use of profane, obscene and disgusting language, it is not within the discretion of the court to arbitrarily refuse to receive competent, relevant and material evidence.

█ Here the court selected the arbitrary date of January 1, 1941, and declined to hear evidence of alleged misconduct of either party prior to that date. This was apparently upon the theory that earlier acts had been condoned and forgiven; but condonation is conditional and is revoked and the original cause for divorce is revived, "1. When the condonee commits acts constituting a like or other cause of divorce; or, 2. When the condonee is guilty of great conjugal unkindness, not amounting to a cause of divorce, but sufficiently habitual and gross to show that the conditions of condonation had not been accepted in good faith, or not fulfilled." (Civ. Code,

§ 121.) The court could not know, without hearing evidence as to the conduct of the parties prior to January 1, 1941, that the ultimate conclusions as to the allegations of cruelty on either side would not have been materially influenced or controlled by such evidence. ■ Furthermore, remoteness of the time of commission of acts of cruelty is not of itself a sufficient ground for excluding evidence of such acts where questions of condonation and the revocation thereof must be decided. Section 118 of the Civil Code, provides: ''Where the cause of divorce consists of a course of offensive conduct, or arises, in cases of cruelty, from excessive acts of ill-treatment which may, aggregately, constitute the offense, cohabitation, or passive endurance, or conjugal kindness, shall not be evidence of condonation of any of the acts constituting such cause, unless accompanied by an express agreement to condone.'' The limitation of the evidence of cruelty to the period commencing with 1941 was ordered by the court upon the pure supposition that the acts charged, if committed, had been condoned and that the condonation, or condonations, if any, had not been revoked. These premature conclusions were material to the merits of the case and, having been arrived at without the receipt of any relevant evidence, were strictly nonjudicial. Such charges as infidelity and associations which are indicative of infidelity, or of other conduct which tends to show that marital obligations have been held lightly, may not be disregarded for any of the reasons assigned by the trial judge. Plaintiff did not accuse defendant of infidelity, but she did allege facts which might reasonably have aroused suspicion in her mind and caused her great worry. Defendant, however, accused plaintiff of infidelity, and this charge was lightly brushed aside by the court. The limitations imposed by the rulings of the court, which were not requested or suggested by either of the parties, were such as to force the conclusion that the case was not fully tried. If under the rulings each of the parties was excused from defending against serious charges made by the other, which the judge stated was fair to both, then each was thereby deprived of an opportunity to prove serious charges of misconduct against the other. It is a fact that contested divorce cases often make extreme demands upon the time of the court, but this situation cannot be obviated by admitting only a part of the material evidence in the case.

■ Plaintiff urged on motion for new trial, and urges

here, that she was prevented from having a fair trial by irregularities occurring during the course of the trial. After the trial had been under way for two or three days, and before any evidence had been received in support of the charges of cruelty, the trial judge communicated to plaintiff at her home the fact that he wanted to talk to her about the case privately in chambers. The request became known to the attorneys in the case and, pursuant to the request, plaintiff attended upon the judge in chambers and the case was discussed without the hearing or presence of any other person.

Upon motion for new trial, affidavits were filed by plaintiff and by the judge, giving the substance of the discussion which took place at the meeting, as each remembered it. It is unnecessary to set out these affidavits, or to consider them at length. From the affidavit of the judge it appears that he inquired of plaintiff whether a reconciliation were possible, was assured by her that it was not possible, and that he then stated to her that he did not look with favor upon separate maintenance and that he thought most of the judges felt the same way about it. He suggested that plaintiff amend her complaint to pray for divorce, stating that if the decree should be in her favor there could be an allowance of alimony, but that if a divorce were granted to the husband, he would not be required to pay alimony. Immediately after his interview with plaintiff the judge made his ruling that evidence would be received as to some of the acts of alleged cruelty, but not as to others, and that the evidence would be limited to occurrences since January 1, 1941. It does not appear that at that time the judge has consciously, or otherwise, made up his mind not to award plaintiff separate maintenance, but it cannot be denied that he would have been reluctant to grant her that relief. Plaintiff had to proceed under the handicap of a preconceived and declared disinclination of the judge to award her the only relief which she sought. It was therefore of vital importance that she make out the strongest possible case. She should have been afforded the fullest opportunity to convince the judge that she had a good case for separate maintenance. At the conclusion of the evidence, when plaintiff's counsel were still endeavoring to put in evidence the letter to defendant from his niece and to persuade the judge to hear the testimony of plaintiff as to the events which followed the discovery of the letter, the court, in sustaining the defendant's objection, stated: "Well,

I think there is enough here on either side in the way of charges and counter charges, plenty of proof.'' But, although there was ''plenty of proof'' to establish the charges and counter charges, it developed that plaintiff's proof was not strong enough to convince the judge that she should have separate maintenance. In other words, she had not succeeded in overcoming the judge's reluctance to award separate maintenance. Considering the evidence of the judge's aversion to granting separate maintenance and his statement, in effect, that there was no insufficiency of evidence to warrant a judgment in favor of plaintiff, it is too clear for argument that the limitations placed upon her evidence constituted prejudicial error. We cannot speculate as to whether the result would have been the same if plaintiff had been permitted to present all her evidence. She was entitled to a full and fair trial, and under the circumstances was peculiarly in need of one.

The judgment is reversed.

Desmond, P. J., and Wood, J., concurred.