[Civ. No. 15217. Second Dist., Div. Three. Oct. 11, 1946.]

Estate of JOEL WACHOLDER, Deceased. FREDERICK L. BOTSFORD, as Executor, etc., Appellant, v. RUBY B. MacINTOSH, Respondent.

Frederick L. Botsford, in pro. per., and Samuel M. Garroway for Appellant.

Arthur E. Schifferman and L. M. Phillips for Respondent.

SHINN, J.—This is an appeal by an executor from an order (1) denying his petition for instructions regarding the disposition of personal property; (2) refusing to settle his second account current and supplement thereto; (3) refusing to reduce his bond from $20,000 to $5,000, and (4) removing him as executor.

Appellant is an attorney at law. He was named in the will of Joel Wacholder as one of two executors and was appointed sole executor on the 1st day of March, 1938. The coexecutor, Mr. MacIntosh, declined appointment, and died in November, 1939. The estate was originally appraised at $37,336.97. Appellant's first account current was filed and was duly approved December 21, 1942. The assets shown in the inventory were accounted for and the estate carried into the next accounting period was of the appraised value of $8,481.15, consisting of a lot in Clear Lake Highlands, Lake County, appraised at $5.00; household furniture and furnishings appraised at $1,000; 250 shares of capital stock of Wacholder Glass and Sales Company, appraised at $3,405; good will and trade name of Argonaut Brokerage Company, appraised at $100; a lot and an interest in another lot in Los Angeles County; some jewelry, and miscellaneous articles of personal property of small value. By the terms of the will the household furniture was bequeathed to respondent, Ruby B. MacIntosh. It was in storage at the time of Mr. Wacholder's death and had remained there. In July, 1944, the executor reported a sale of it to one Wexler for $850 and asked for confirmation of the sale, which was opposed and was denied by the court, and the executor thereupon filed his petition for instructions as to what to do with the property. It was shown by his petition that the estate was still indebted in the amount of $603 for storage of the furniture, and for costs and expenses of administration in an amount exceeding $1,000. Ruby B. MacIntosh thereupon filed a petition for removal of the executor, upon the grounds that he had filed no account since February 13, 1942, and "That said Frederick L. Botsford has wasted and mismanaged and is continuing to waste and mismanage the property of said estate, has wrongfully neglected said estate, and has long neglected to perform any act as Executor." Appellant demurred to the petition for removal upon general grounds, and upon the special ground that it was uncertain, in that it could not be ascertained "in what manner or how the said Frederick L. Botsford has wasted or mismanaged, or is continuing to waste or mismanage the property of the above-entitled estate, or how or in what manner the said Frederick L. Botsford has wrongfully neglected said estate or has long neglected to perform any act as executor or otherwise." Appellant also filed an answer to the petition, but in the meantime had filed his second account cur-

rent. To this account Ruby B. MacIntosh filed objections upon the following grounds: that said account failed to balance; that an amount shown as having been advanced to the estate by the executor in the sum of $502.89 was not itemized; that no vouchers had been filed; that no dates of receipts or payments appeared in the account, and that the liability of the estate for storage charges of the furniture was not shown. Appellant's request in his account for the reduction of his bond was objected to upon the ground "that the executor's actions herein are presently under objection."

The demurrer to the petition for removal was over-ruled, but we do not understand why for it should have been treated as a request that the charges be made specific and should have been granted. Appellant was entitled to have the charges made specific; general charges of waste and mismanagement would be about as difficult to meet as general charges of fraud. Also, the court was entitled to have the issues clearly defined before entering upon a trial. The objections to the account did not challenge the accuracy of any item of the receipts or disbursements. Respondent should have been required to make her objections specific. (*Estate of More,* 121 Cal. 635 [54 P. 148]; *Estate of Sylvar,* 1 Cal. App. 35 [81 P. 663].) The several matters were heard together. The trial commenced without the definition of issues as to any acts of alleged waste, mismanagement or neglect upon appellant's part, or as to any improper charge or credit in his account which respondent expected to prove. The trial ended in all the uncertainty with which it started and without the determination of any specific fact upon the petition for removal or the objections to the account.

Upon the issue of dereliction of duty, the court made a general finding that it was true that the executor had wasted, mismanaged and wrongfully neglected said estate. As to the contest over the account, the finding was, "That said account current of said executor and the supplement thereto, do not reflect the true condition of said estate." Nevertheless, petitioner's letters were revoked and he was removed as executor. After the receipt of extensive evidence, action on the account and supplementary account which had been filed was deferred indefinitely.

The reporter's transcript of the hearings shows that respondent, Ruby B. MacIntosh, was no more prepared to prove acts of malfeasance or misfeasance on the part of the

executor, or errors in his account, than she was prepared to allege them. We have read and reread the transcript and the generalities of the brief of respondent and have been unable to find in the record any evidence of waste, mismanagement or neglect in the performance of appellant's duties, or any evidence which would have supported a finding that he should have charged himself with more or credited himself with less than was shown by his account. This is not to say that appellant's administration was proved to have been free of any act of waste, mismanagement or neglect, but that there was insufficient evidence to support charges of malfeasance or misfeasance. So far as the accounts before the court were concerned, there was no evidence to question their correctness. As will be pointed out, respondent confined her efforts to an attack upon appellant's first account, which had been approved in 1942. There has been no trial and determination as to the correctness of the current accounts.

In the matter of appellant's removal as executor, the order should, of course, be sustained unless there is an entire absence of evidence of unfitness or breach of duty on the part of appellant. The trial court exercises a broad discretion in such matters (*In re Bell's Estate,* 135 Cal. 194 [67 P. 123] ; *Estate of Healy,* 137 Cal. 474 [70 P. 455] ; *Estate of Newell,* 18 Cal.App. 258 [122 P. 1099]), but, as the court stated in *In re Welch,* 86 Cal. 179, at 183 [24 P. 943] : ''While it is the duty of the courts to protect carefully the interests of estates, the rights of those who are appointed to take charge of and manage them should not be overlooked; and an administrator should not be removed except for good and sufficient cause.'' (See, also, *Estate of Chadbourne,* 15 Cal.App. 363 [114 P. 1012].)

The appeal involves little in addition to an examination of the record for evidence of waste, mismanagement or neglect on the part of appellant. Although the court made only general findings, it does not appear that appellant objected to them or requested special findings, as he had the right to do under section 634 of the Code of Civil Procedure, and he must be deemed to have waived the objection that there were no findings as to specific acts of waste, mismanagement or neglect. (*Del Ruth* v. *Del Ruth,* 75 Cal.App.2d 638 [171 P.2d 34].) The findings as made were sufficient to support an order revoking appellant's letters testamentary. (Prob. Code, § 521.) However, the absence of special find-

ings has imposed upon us the necessity of making a careful study of the record to discover the grounds which the court considered sufficient and other grounds, if any, for appellant's removal. As will appear hereinafter, the court announced four reasons for revocation of the letters: (1) That appellant had an interest in Wacholder Glass and Sales Corporation, the stock of which was owned by the estate, which was adverse to the estate; (2) that appellant has been guilty of some misconduct in connection with the storage and proposed sale of the household furniture; (3) that in the settlement of his *first* account, appellant had taken excessive credits and that the order settling that account was erroneous, and (4) that it would be necessary to revoke appellant's letters and appoint an administrator to bring suit against appellant for any sums which he might owe the estate.

The theory of adverse interest was evolved from evidence as to the winding up of the corporation shortly after Mr. Wacholder's death. Prior to his death in 1938, he had been a dealer in machinery and equipment, new and second-hand, the nature of which does not clearly appear. The business was incorporated as Wacholder Glass and Sales Corporation and Wacholder at the time of his death was the sole stockholder. Due to illness for two years preceding his death, he had entrusted the entire management of the corporation to Mr. MacIntosh, husband of respondent, who managed it to the time of his own death in 1939. Appellant, as executor, then became active in the management of the business, was made vice-president, Mrs. MacIntosh became secretary, and they jointly signed checks on the corporation's bank account. After the death of MacIntosh, no one remained who could carry on the business and it proceeded into liquidation. One paid employee was retained, Mrs. MacIntosh devoted much time to the business, as did also a Miss Reid, who was a creditor to the extent of some $5,500 which she had loaned to the corporation upon notes, one, if not both of which, was guaranteed by Wacholder and secured by 250 of his 500 shares of stock. The obligations of the corporation were gradually reduced, and finally its remaining assets were sold for $1,200, from which some remaining debts were paid, leaving a balance of $500. Pursuant to agreement between the interested parties, this sum was divided, $400 to Miss Reid and $100 to Mrs. MacIntosh. During the period in question, Mrs. MacIntosh was represented by the late Marshall Taylor of the

firm of O'Melveny, Tuller & Myers, and Miss Reid by Mr. Plumb of the firm of Overton, Lyman & Plumb. All this occurred long prior to the filing and approval of appellant's first account as executor, at which time the corporation was without assets and its stock without value. In the instant proceedings, respondent was permitted to inquire into the matter of the winding up of the corporation, upon the insistence of her counsel that facts would be developed which would prove appellant's unfitness to act longer as executor. It was then shown that in 1938 the corporation was indebted to Mr. MacIntosh in some amount between $2,500 and $3,500, part of which was evidenced by checks which had not been paid. MacIntosh had the control and management of the business and he and appellant signed company checks. It was arranged that $1,750 would be paid by the corporation for the account of MacIntosh and would be credited upon the debt due him. Checks were drawn for this amount, payable to appellant, signed by appellant and MacIntosh, the latter agreeing to loan the money to appellant. After the death of Mr. MacIntosh, an agreement was entered into under the direction of Mrs. MacIntosh's attorney, by which the corporation acknowledged its indebtedness to Mrs. MacIntosh in the amount of $1,000, the claim of the MacIntosh estate against the corporation was cancelled, and appellant assumed an indebtedness to the MacIntosh estate in the sum of $1,750. This agreement was approved by the court in the estate of MacIntosh and appellant subsequently paid the $1,750 in full. This transaction with the corporation, as we say, took place in 1938. Mrs. MacIntosh was satisfied with it at that time and did not later question it until, in the instant proceeding, appellant was questioned about it. He gave a full explanation of the seven-year-old transaction and there was no evidence that he had not acted honestly and in good faith. The $1,750 incident was urged by respondent, and appears to have been viewed by the court, as a sufficient reason for appellant's removal as executor. Although the transaction was seven years old, the money appellant had borrowed from Mr. MacIntosh had been paid in full, the corporation had long since become defunct, and appellant had continued to act as executor without protest from respondent, it was held that he had some sort of interest in the corporation which was adverse to the estate. At the conclusion of the first hearing the court stated: "I don't know whether the Objector, or anybody interested in this estate is ever going to make anything out of it, but

it certainly cannot be tested by an executor who has a conflicting interest. These matters have to be determined by the acid test of *adverse interest,* and for instance, I think this furniture alone is enough to remove the executor. . . . I think the accounts are wrong. I wouldn't want to accept them, *because I think it has been clearly disclosed that the executor had an adverse interest in this company.* I haven't gone far enough to reach a conclusion about it, except for the *adverse interest.* The prognosis of getting anything out of it is poor, *but it can never be tested unless some administrator is appointed who will, if necessary, sue the executor.* In the matter of the petition to remove the executor, his powers are suspended, and letters are revoked, and of course, that is all I can do now, until somebody applies to have themselves appointed as administrator." (Emphasis ours.) So far as Mrs. MacIntosh was concerned, she was interested in the liquidation of the corporation only as a creditor of the corporation and as a legatee of the furniture. She was secretary of the corporation during the liquidation and agreed to the final sale of assets and distribution of the proceeds. The acts of appellant in liquidating the corporation as executor and for the benefit of the estate, as sole stockholder, were subject to review in the settlement of his first account. Technically, he had acted as an officer of the corporation, but being also, as executor, the sole stockholder, he would have been responsible to the estate for any breach of duty in protecting the interests of the estate. Mrs. MacIntosh, through her attorney, had actual notice of the filing of the first account and filed no objections thereto. Four other legatees and devisees who had been left stock in the corporation did file specific objections, and Margaret Reid, a creditor, filed exceptions. The four devisees and legatees objected to specific items of the account, including those hereafter discussed, which were questioned by respondent in the instant proceeding. All the objections to the first account were withdrawn at the time the account was settled. There was no evidence that appellant ever had an interest in the corporation, adverse to the estate, nor any interest except to wind it up to the best advantage of the creditors and the estate.

Another reason stated for appellant's removal was that he had attempted to get court approval of a sale of the furniture and had caused it to be removed from a warehouse. It was shown that Mr. Wexler, when he offered to buy the

furniture for $850, paid the storage charges of $603 and removed the furniture to his own warehouse or building, in order to save further storage charges. Nothing more appears with reference to the furniture. There was no evidence that the estate had been in condition at any time to allow distribution of the furniture to Mrs. MacIntosh, but it appeared, to the contrary, that there had been, at all times, unsatisfied obligations. There was no evidence whatever that the furniture, or any part of it, had been lost, injured or destroyed or that it was not safely stored. Nevertheless, in this connection the court said: "If the furniture is lost the executor will be certainly chargeable with it. The value of the furniture must be very high. All that stuff sells," and, further: "I think this furniture alone is enough to remove the executor. The furniture has been removed from a warehouse. It is rather vague where it is. I think it should be taken into possession. It is a question—the correction of the amount against the storage charges." There was nothing in these facts to justify the removal of appellant as executor. He was in court seeking instructions as to what to do with the furniture. He could only keep it longer in storage, sell it, or, when the condition of the estate permitted, distribute it to respondent. He asked for permission to sell it, which was refused, and the estate still has it.

Appellant was questioned at length as to the payment of a claim of the corporation against the estate in 1938. The estate was indebted to the corporation in the sum of some $14,746.76 for secondhand goods purchased by Wacholder from the corporation in the name of his brokerage company, through which he was accustomed to sell such goods. Appellant testified that in settlement of this debt the estate paid the corporation $10,689.93 in cash and transferred to it certain accounts and items of personal property at a price of $4,056.93. The transaction was reported in appellant's first account and approved, but was revived in the instant proceeding. Appellant, with the first account before him, repeatedly explained the transaction. His explanations were clear, but the attorneys for respondent claimed and still claim to remain unenlightened, or at least unconvinced. Their assertion was and still is that appellant in his account took a credit of $4,056.93 to which he was not entitled. We have examined appellant's first account which was before the trial judge and find that it fully supports appellant's testimony at the hearing. The account is in balance. It shows that appellant charged

himself with the appraised value of items of personal property and accounts receivable in the sum of $6,888.04; that he sold these accounts to the corporation for a credit of $4,056.93 and paid the corporation $10,689.93 in cash, in satisfaction of its allowed claim for $14,746.76. He took credit in the account for $14,746.76 paid in settlement of the claim and also for $2,831.11 as a reduction of the inventory by reason of the loss in the sale of the personal property. The debts and credits each equal $17,577.87, and yet respondent, in her brief, says: "But the respondent contended that it was evident upon the face of the account that the appellant had failed to charge himself with the difference or $4,056.93. The court found this contention to be well *found*, and its conclusion to this effect was one of the potent factors that led to the making of the findings and the entry of the judgment involved in this appeal."

Turning to the record, we find appellant insisting not only that his account was correct, but that the order approving it could not be questioned, except upon the ground of fraud or by one under disability, and he pointed out that there was no charge of fraud in the settlement of that account, saying, "We have the authorities on that; fraud—and one other exception, where the interested person is physically incapacitated, or where a minor—— THE COURT: That would enter here. If anything was wrong with the first account, it would be fraud anyway." After examining the account with reference to the $4,056.93 item, the court said: "It appears twice in Schedule A, once actually and once by deduction. I am not going into all that now, but this has gotten me to the point that I was just about ready to rule on, and I don't think we need to proceed," and the order of the court was: "The executor is instructed to submit a correct account within thirty days. . . . Petition for removal of executor; power suspended, letters revoked, and the accounts are simply not approved. It is subject to another true and correct account. I understand the court can refuse to accept an account if it is wrong in any one particular, so I have not in any way attemped to determine what parts of the account are true. I ask the executor to file another account." We repeat, there was no evidence whatever relating to the account which was then before the court, but only as to items of the first account. We have examined the first account with reference to some other items which were questioned by respondent and which were

represented to the court as showing that appellant had taken other excessive credits in that account. No such improper credit appears in the account. The devisees and legatees had attacked the settlement of the corporation's claim of $14,746.76 and certain credits taken in that account for losses on sale. The withdrawal of their objections is the best proof that they were satisfied with the account.

Appellant filed a supplement to his second account which did not differ from the original second account, except by showing that he had advanced an additional $10 to the estate, and this came on for hearing without further objections by respondent. Appellant had had his accounts examined by the resident partner of an accounting firm, whom he offered as a witness to testify that the accounts were in balance and that appellant had accounted for all of the assets with which he was charged, and appellant insisted upon proceeding with the hearing, saying, ". . . your Honor did not foreclose us from proving any of these items that are in dispute at this time," and the court said: "I don't think so, except this; I would be very hesitant to put a stamp of approval on this account at this time. I have already suggested to the other side that I think they are up against a pretty forlorn hope. I am not at all certain they are going to get very far, but I think they have the right to try. It might avoid a lot of trouble. I feel quite competent that I am not going to approve this account, today in any event, and they may, after they have had two or three months to see what they can do—they may give up and we will accept the account as it is, because there is nothing else left to be done." Appellant's attorney recalled that the court had suggested a reference of the matter and stated that appellant would welcome it, but no ruling was made upon it. Appellant again insisted that his accountant should be allowed to testify, saying, "I do not want to leave this courtroom with the charge I absconded with that money," and the court said, "You know what the testimony of your own witness it, so it is not necessary to present it." The matter was continued over appellant's objection. The court then appointed Ruby B. MacIntosh special administratrix and fixed her bond at $5,000.

No criticism was made of any act of appellant or failure to act after the settlement of his first account, except that which related to the proposed sale of the furniture. There remained unpaid one claim of $2,388.13 which appellant reported in his present account as having been settled by the conveyance

of the estate's interest in Lot 4 of Tract 2043, Los Angeles County, in which settlement the creditor gave a full release and paid the estate $626.69. Claims of Miss Reid for $5,500 had been disallowed by the executor and she had brought suit upon them. Her claims were settled by transferring to her certain items of jewelry and paying her the sum of $321.50. The settlements with these creditors were made after appellant had sought and obtained court approval. These matters reflected no neglect or incompetence on the part of the executor. By appellant's second account, the remaining assets of the estate were shown to consist only of a lot in Lake County of the value of $5.00, the household furniture and furnishings, the stock in the defunct corporation, which had been appraised at $3,405, and the good will and trade name of a defunct brokerage business which had been appraised at $100, which items of stock and good will were shown to be without value. Incidentally, appellant offered at the hearing to furnish a bill of particulars as to the amounts he had advanced to the estate, and he presented vouchers for the sums which he had paid out.

The procedure which was followed, consisting of the removal of the executor and the appointment of a special administratrix appears to have resulted from a misconception as to the jurisdiction of the court in probate. This is illustrated by the statement of the court above quoted, "but it can never be tested unless some administrator is appointed who will, if necessary, sue the executor," and in the statement of counsel for respondent during the last hearing that, "I think now that we have a new administrator in the estate we can sufficiently prepare our remedy by suing Mr. Botsford for the amount of the discrepancy we claim in the estate." It appears to have been overlooked that any matters in controversy between the estate and appellant were exclusively for determination by the court in probate, in the settlement of appellant's accounts. The removal of appellant as executor could not shift such matters from the probate to the general jurisdiction of the court. (*Best* v. *Coloneus,* 56 Cal.App.2d 285, 287 [132 P.2d 260], and cases therein cited.)

The further proceedings which will be required in the matter of the estate will consist of hearings for the settlement of appellant's second account, supplement thereto, and any further accounts which he may present. If the finality of the order settling his first account is to be questioned, it must be upon recognized legal grounds and under appropriate plead-

ings. His accounts must be settled in any event, but the consequences of the order removing him, if it should be sustained, would be disastrous to him. He would have been convicted of waste, mismanagement and neglect; he could not prove his innocence of these charges in any future proceedings and would stand before the court as an unfaithful and discredited trustee.

The fact that appellant is an attorney at law inclines us to make some additional observations. Appellant did not draw Mr. Wacholder's will and there was no evidence that he sought appointment as executor. He was chosen by Mr. Wacholder as one considered qualified to act as executor of the will. The will authorized the executors to carry on any businesses of the estate at the risk of the estate. Appellant was familiar with Mr. Wacholder's affairs and must have known that they were in a precarious condition. By reason of the unexpected death of Mr. MacIntosh, the burden of liquidating the corporation's business was cast upon appellant and Mrs. MacIntosh. The estate, also, was largely indebted, and appellant's task was to pay or compromise the obligations of the estate and, if possible, save something for the beneficiaries of the will. It was a business which required close attention and much effort and, so far as disclosed by the record, appellant was both vigilant and competent in the performance of his duties. Such difficult responsibilities are frequently cast upon attorneys and are undertaken with the knowledge that the compensation will be meager, and this, we think, is a practice which should not be discouraged. While it is the clear duty of the court to remove an executor or administrator when his unfitness has been proved, it is at the same time the right of every trustee to receive full acquittance of charges impugning his integrity or competence which are not established by clear and satisfactory evidence.

The order is reversed insofar as it directs the removal of appellant as executor and denies his application for reduction of his bond. The appeal from those portions of the order which denied the petition for instructions and which deferred action upon his accounts is dismissed, appellant to recover costs.

Desmond, P. J., concurred.

WOOD, J.—I dissent. In my opinion the orders should be affirmed.