[Civ. No. 20895.   Second Dist., Div. Two.   June 1, 1955.]

MOLLYANNE ESHELMAN, Appellant, v. ROBERT C. ESHELMAN, Respondent.

Austin, Austin, Jones & Chaffee for Appellant.

Robert M. Kaufman for Respondent.

McCOMB, J.—An interlocutory decree of divorce was granted plaintiff from defendant on February 6, 1950.  Such order awarded the custody of the two minor children of the parties to plaintiff.  On October 13, 1954, the trial judge

modified the previous order relative to the custody of the children and awarded them to defendant. From this latter order, plaintiff appeals.

*Facts*: Plaintiff on December 23, 1953, filed an order to show cause for modification of the order permitting defendant to visit his children. On April 20, 1954, defendant filed an application for a modification of the order awarding the custody of the children to plaintiff. These matters came on for hearing June 17, 1954. At that time the court directed an investigator to examine the physical, spiritual and psychological environment of the two minor children and the matter was continued until October 8, 1954. On such date evidence was introduced on behalf of defendant, at the termination of which the following colloquy occurred between the court and plaintiff's counsel:

"THE COURT: . . . I will give consideration to any school or schools that Dr. Eshelman and his former wife, Mollyanne Eshelman, will recommend, and to the end that we determine what school these boys are going to be placed in, I am going to continue the matter until Wednesday, the 13th of October, at 9:00 o'clock.

"Right now, I am going to make an order that on that day both of these boys are going to be packed up and taken to some school and we will make further disposition of the question of visitation by both parents thereafter.

"For all other issues involved in this case, we have agreed upon the date of November 8, at which time the Court will endeavor to conclude all phases of this most unhappy litigation.

"MR. PINNICK: Your Honor, I apologize before I make this statement, but it is my opinion that I haven't been given an opportunity to present evidence combatting this order or combatting the proposition that these boys should go to a military school. I would like to have that order read, not that the Court will now order that they be ready to go to military school, but will take evidence on the advisibility of placing them in school on Wednesday, and make the order at that time that they shall go to school.

"THE COURT: Well, Mr. Pinnick, I will be indulgent to you to the extent that you may be heard, provided it will not interfere with the resumption of a trial that is going on on that day. It is a trial that was continued over from last Thursday. I have a trial pending in this court at this time. I will hear you, but it will have to be limited to that time.

"Now, understand counsel, that this matter has been considered by the Superior Court in this County for several years and understand that we have already had evidence at the previous hearings in this matter regarding what is best for the welfare of those boys. While I appreciate the fact that you are newly substituted in here and have lacked the opportunity to experience what has preceded this proceedings here this morning, and while I want to be perfectly reasonable with you and give you every opportunity to be heard, I can't, for the interests of these children, vacate the order that I have made unless you show me good cause next Wednesday morning. These orders are always subject to alteration.

"MR. PINNICK: Yes, sir. I thought perhaps that some qualified opinions should be allowed to be expressed on whether the boys should go to a military school.

"THE COURT: Mr. Pinnick, I will be very glad to hear from you Wednesday [October 13] morning."

Thereupon the matter was continued until Wednesday, October 13. When court convened on October 13, 1954, after the court had recited some previous facts pertaining to the litigation between the parties, the following occurred between the court and plaintiff's counsel:

"THE COURT: . . . Let the record also show that the Court has had the advantage of discussing this matter with Mr. Warren Benton. Mr. Warren Benton is, in one sense, a court attache and doing a high minded work with his associates in investigating home conditions and environments and the fitness of parents who have the custody of children of tender years. Mr. Benton has made numerous reports to this court covering many back hearings. I have talked to Mr. Benton as late as this morning. I have told him that it was my opinion that at the present time there is quite a crisis with reference to the welfare of these two little fellows, and that I think that something should be done in order to give them a new atmosphere and a new opportunity to forge out into the status of development that has long since been retarded. He agreed with me wholeheartedly and he said that he felt that that is precisely what he would like to have done himself.

"Now when I speak of Mr. Benton, I am speaking of advice and observations of an expert. I don't claim to be an expert, but I am trying to deal with these problems with a heart. It isn't like taking these children away from mother and father; they will have many opportunities to visit with their children and we will cooperate in every way we can with the school

authorities to the end that the children are made happy and that the parents will have an opportunity to live normal lives, seeing the children whenever they can.

"Now, do you desire to protest that, Mr. Pinnick?

"Mr. PINNICK: Your Honor, did you make a finding as to who now has legal custody?

"THE COURT: No, I am not disturbing that order. This case is continued until the 8th of November for further decisions to be made, and as far as the physical custody of the children are concerned, when they are in that school they are of course going to be in the custody of the school authorities. Otherwise the school wouldn't be able to do anything for them.

"Mr. PINNICK: Well, Your Honor, there are cases that show that the law presumes that the person are fit and I would like to remind the Court that we haven't been allowed to put on any evidence on behalf of the plaintiff's side, as to her fitness.

"THE COURT: Well, you may be reminded, counsel, that you and Mrs. Austin have come into this case very lately. Mrs. Austin is as late as this morning and you are as late as last week, and there have been quite a number of hearings up here and the Court has heard a considerable amount of testimony in connection with the claims and counterclaims of both parents in this case.

"Mr. PINNICK: Yes, Your Honor, I am relying upon my client's advice that she hasn't been able to present on the witness stand testimony in support of her fitness.

"THE COURT: Well let us bravely cooperate on this thing. It has, after all, developed into an age old tug of war and is a rope that you are using around the life of these two children. You are using the life of the older one and that will break soon, and soon you will come into the life of the other one. Let's not ruin the lives of these children. It isn't a contest where you will win or they will win or the lady on one hand and the father on the other will win. Let's win for these children; let's do something for them.

"Mr. PINNICK: Yes, Your Honor, that is the way I feel about it, only I feel the children will win, as you put it, with the mother. I respectfully submit that they are better off with the mother. I can't help my opinions on this thing. I wouldn't submit the notice I am going to submit without feeling that way, and then I would like also to call your Honor's attention to 25 Cal.2d 141 [152 P.2d 999], which says the artifices of giving bare legal custody to the parents and putting

the actual physical custody in strangers cannot be used to deprive a parent of custody unless there is a clear finding of unfitness of that parent.

"THE COURT: I thought I had found that.

"MR. PINNICK: Yes, you did your Honor.

"THE COURT: Counsel, I respect you sincerely and I am not trying to be short with you. It seems I have been having more than my share of heartaches up here for the last two weeks and that is not enough. I will see you all on November 8.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"MR. PINNICK: Might I call your Honor's attention to the case of 83 Cal. 574 [23 P. 1035], which says that an appeal may be taken from this order and that such an appeal suspends and stays the jurisdiction of the Court to enforce the modification. I believe I am within my rights to say that the children shall not go to school pending that appeal.

"THE COURT: I don't agree with you and I think you had better be very careful about thwarting the Court's order on this.

"MR. PINNICK: I am, your Honor. I researched this point carefully and I can give you the citations, if you wish.

"THE COURT: Well, November 8 will roll around soon. Meanwhile I hope those children are in that school.

"MR. KAUFMAN: Your Honor, will you also include in the order that the father has the right at 7:00 or 8:00 o'clock tonight to pick up the children for the purpose of bringing them immediately to that school.

"THE COURT: Is that the arrangement that you have made, Dr. Eshelman?

"THE DEFENDANT: Your Honor, I have made arrangements to put the children in as soon as I can get them in my possession to take them there or furnish the transportation. I can furnish the transportation this evening and have them in the school tonight or tomorrow morning.

"THE COURT: Do I understand you counsel for the mother of these children, that you are not going to permit that?

"MR. PINNICK: *I think it is our legal right to say that this appeal suspends the order of the court.*

"THE COURT: *There is no appeal pending.*

"MR. PINNICK: *I have just filed a notice of appeal, your Honor, and that is the institution of the appeal from this specific order, and under the law the situation——*

"THE COURT: Well, apparently you don't want us to.

"MR. KAUFMAN: Will you also include in the order, your

Honor, that the father has the right to pick up the children at 7:00 o'clock tonight.

"THE COURT: Yes, that is in the order. If you want to thwart it, you will suffer the consequences. What is the name of the school?

"MR. KAUFMAN: The Ramsey Military Academy, Santa Monica.

"Your Honor, one point further on the question of custody. Shall we, in view of the attitude of counsel and plaintiff in this particular action. ——will your Honor make an order granting the custody of these children so we may have a right to pick up the children?

"THE COURT: Yes. Let the previous order of this Court awarding custody to the mother, be vacated and set aside, and from now on the custody of these children for the purpose of effectuating the order of this Court is now in the father. He is awarded the legal custody of these children." (Italics added.)

*Questions:* First: *Was plaintiff deprived of her day in court?*

*Yes.* ▮ It is a cardinal principle of our jurisprudence that a party shall not be bound or concluded by a judgment unless he has had his day in court. This means that a party must be duly cited to appear and afforded an opportunity to be heard and at such hearing to offer evidence in support of his contentions. ▮ His right to a hearing does not depend upon the will, caprice or discretion of the trial judge who is to make a decision upon the issue. Judgment without such an opportunity is lacking in all of the attributes of a judicial determination. (*McClatchy* v. *Superior Court*, 119 Cal. 413, 418, 421 [51 P. 696, 39 L.R.A. 691]; *Del Ruth* v. *Del Ruth*, 75 Cal.App.2d 638, 646 [6], 649 [171 P.2d 34]; *Moore* v. *California Minerals etc. Corp.*, 115 Cal.App.2d 834, 836 [2] [252 P.2d 1005].)

▮ Applying the foregoing rule to the record in the instant case it is apparent that plaintiff was deprived of her right to present evidence at the hearing on October 8th. In response to plaintiff's counsel's suggestion that he would like to present evidence, the court said: "Mr. Pinnick, I will be very glad to hear from you Wednesday [October 13] morning." On October 13th, after the court had made a lengthy statement he asked plaintiff's counsel if he desired to protest, in reply to which plaintiff's attorney stated in substance that he would like to present evidence by calling his client

to the witness stand and taking her testimony. This the court refused to permit but made an order changing the custody of the children and directing that they be placed in a military academy. Thereupon the matter was continued to November 8th.

Clearly plaintiff was deprived of her day in court by not being permitted to present the testimony she desired. Mr. Justice Shinn, in *Del Ruth* v. *Del Ruth*, 75 Cal.App.2d 638, at page 646 [171 P.2d 34], aptly states the rule thus: ". . . A trial of this sort is not an arbitration; it is an inquiry for the determination of matters of fact . . . it is not within the discretion of the court to arbitrarily refuse to receive competent, relevant and material evidence."

Second: *Did the trial court exceed its jurisdiction in refusing to stay enforcement of its order modifying the custody of the children after the notice of appeal from such order had been filed?*

*Yes.* ■ An appeal from a custody order deprives a trial court of jurisdiction to change the custody status which exists at the time of the appeal. (*Lerner* v. *Superior Court*, 38 Cal. 2d 676, 680 [1] [242 P.2d 321].) In view of the foregoing rule the trial court erred in making an order changing the custody of the children pending the appeal from his previous order.

Reversed.

Fox, J., concurred.