[Civ. No. 19567.   Second Dist., Div. Three.   Feb. 5, 1954.]

DR. ARTHUR NATHAN HAHN, Respondent, v. SARAH E. HAHN, Appellant.

Templeton & Miller for Appellant.

Edward Carter Maddox and William B. Murrish for Respondent.

VALLÉE, J.—Appeal by defendant Sarah E. Hahn from a judgment decreeing foreclosure of a deed of trust and ordering a sale.

In 1946, Young Hahn, uncle of plaintiff, and defendant were living together as man and wife. They were not married because Young is a Korean by birth and defendant is a Caucasian. They lived together from 1937 until May 29, 1951, when they separated.

In August, 1946, Young and defendant contemplated purchasing a parcel of improved realty for $25,000. Young testified he discussed the purchase with defendant, and how the $25,000 might be raised, and told her, ''We only have about $3,000 to begin with, but I told her, 'We probably can get a loan from the bank, say, five or $8,000'; and then the balance I was going to borrow from my nephew [plaintiff]. . . . She said, 'Sure, if it's going to be profitable for us, well, why not do it?' ''

Young talked to plaintiff and informed him of his and defendant's plan to buy the property and of their need for a loan to do so. Plaintiff agreed to lend $20,000, to be repaid $2,000 a year, commencing one year thereafter, with interest at 5 per cent. The money was paid to Young by means of several checks mailed to him, at plaintiff's instructions and directions, by plaintiff's father, Sai Di Hahn. Young deposited the money in defendant's bank account. Thereupon, Young and defendant purchased the property. They obtained the purchase price as follows: $3,000 cash from their savings, $8,000 from a bank loan, and $14,000 from the proceeds of the loan from plaintiff. The balance of the $20,000 loan from plaintiff was invested in furniture and in repairing and improving the property. Young testified he had told defendant he ''got the money from Mr. S. D. Hahn, through the request of my nephew Arthur [plaintiff], and that the money

was sent to us so that we could purchase the property." Defendant signed the escrow instructions in connection with the purchase. Title was taken in defendant's name only; it was thought that Young could not hold or take title to realty in his own name because of his Korean birth.

When the first payment of the loan became due in August, 1947, Young and defendant were unable to meet it. Young testified he told defendant they couldn't raise the money and asked what they should do about it; "[W]e figured we'd ask him [plaintiff] to take a trust deed on the property for $20,000, and let us pay as we had promised"; the commencement of payment "was to be made a year from the first date when it was due; that would be August of 1947; so, we were to make our first payment in 1948"; and defendant said, "That's all right."

Young testified to a conversation he had with plaintiff. He stated he said, "We couldn't pay you [plaintiff] the first payment as we had agreed orally, but in order to secure the $20,000 you advanced me, how would you like to take a trust deed on the property, and make the payment as usual; $2,000 with five per cent interest a year on the unpaid balance? And he said, 'Sure, that's okay.' " Plaintiff testified that he had a conversation with Young in August of 1947 concerning the repayment of the loan; he agreed to accept a promissory note and a deed of trust and that they could make the payment the following year.

On August 22, 1947, Young and defendant went to a lawyer and had a promissory note and a deed of trust drawn on the terms and conditions agreed upon. Defendant signed the note and signed and acknowledged duplicate originals of the deed of trust. Young testified the lawyer gave the papers to defendant and advised her to record them; defendant gave the papers to him and told him to keep them in his office safe and to record the deed of trust whenever he got around to it; "She said for me to give Dr. Arthur Hahn a copy of this trust deed, and also . . . the . . . promissory note"; he gave the note and one of the duplicate originals of the deed of trust to plaintiff; one of the duplicate originals of the deed of trust was kept in his safe until January 20, 1948, when he recorded it; when he did, he made a notation on the back of it that it be mailed to defendant; when it came back from the recorder's office, it was in an envelope addressed to defendant; he delivered it to her. Plaintiff iden-

tified the original promissory note and the duplicate original of the deed of trust which had not been recorded and testified Young had given them to him sometime in August of 1947.

While defendant and Young were living together, Young managed the financial and business affairs of both, with defendant's consent. On prior occasions, they had purchased four other rental properties and had taken title in defendant's name; defendant collected the rents and turned them over to Young; and they were managed and controlled by Young. He signed checks made payable to defendant, with her consent. All income received by either was placed under his management and control.

Defendant denied she ever agreed to the 1946 oral loan or that she ever knew of the use of the proceeds of such a loan to purchase the property. She contended she "really thought" that the money came from the family safe, from accumulated joint funds. She denied she ever knowingly signed the trust deed or the promissory note and contended she thought she had signed papers in favor of Young only, not plaintiff. She also denied she ever delivered the promissory note or deed of trust to Young to be transmitted and delivered by him to plaintiff.

Neither Young nor defendant paid any of the principal or interest on the promissory note. Plaintiff brought this suit for foreclosure of the deed of trust.

The court found: 1. From 1937 until May 29, 1951, Young and defendant lived together as man and wife, but were not married. 2. The property was purchased by Young and defendant for $25,000; title was taken in defendant's name as her sole and separate property. 3. In August, 1946, Sai Di Hahn, as an agent for plaintiff, forwarded by mail to Young the sum of $20,000, which was used in part on the purchase price of the property, in part on the purchase price of furnishings therefor, and in part for repairs. 4. Young orally agreed to repay the $20,000 at $2,000 a year with interest at 5 per cent a year. 5. On August 22, 1947, defendant made and executed to plaintiff the deed of trust and promissory note for $20,000, and delivered them to Young; Young delivered a copy of the trust deed together with the original promissory note of $20,000 to plaintiff. 6. On January 28, 1948, Young delivered the original deed of trust to the county recorder and instructed the recorder to return the deed of trust after recordation to defendant; and it was thereafter mailed by the recorder to her. 7. Plaintiff is the owner and holder of the

deed of trust and promissory note. 8. The note is due and payable, and no part of it has been paid. 9. Plaintiff gave defendant "good valuable" consideration for the note and deed of trust. Judgment for plaintiff followed. Defendant appeals.

Defendant's specifications of error are: 1. The evidence is insufficient to support the findings. 2. The court erred in failing to make a finding as to the agency of Young to act for her. 3. The court erroneously admitted evidence which was prejudicial to her.

It is first urged that there was no consideration for the promissory note. In negotiating the loan Young acted for defendant and himself. The loan was made to defendant and Young. Of the $20,000 loaned, $14,000 went into the purchase of the property, title to which was taken in the name of defendant. Defendant signed the note and deed of trust. ▉ It is presumed that a promissory note was given for a sufficient consideration. (Code Civ. Proc., § 1963(21).) The presumption is enough to support the finding that the note and deed of trust were supported by a valid consideration. (*Westberg* v. *Willde,* 14 Cal.2d 360, 365 [94 P.2d 590]; *Scott* v. *Burke,* 39 Cal.2d 388, 395 [247 P.2d 313].) ▉ Further, plaintiff's agreement to extend the time for the first payment of the principal of the loan constituted a good and valid consideration for the note and deed of trust. (*Bank of America* v. *Hollywood Imp. Co.,* 46 Cal.App.2d 817, 821-822 [117 P.2d 13].)

Defendant next says there was no delivery of the note and deed of trust. The argument appears to be that because defendant did not personally deliver the note and deed of trust to plaintiff and because she retained possession of one of the duplicate originals of the deed of trust, there was no delivery. The point is without merit. ▉ Young, at the request of defendant, delivered the note and one of the duplicate originals of the deed of trust to plaintiff. Delivery by an authorized agent constitutes a valid delivery. (Civ. Code, § 1059(2); *Neely* v. *Buster,* 50 Cal.App. 695, 698 [195 P. 736].) ▉ Delivery of a duplicate original of a deed of trust is the equivalent of delivery of a single original. (See *Brenner* v. *Lesher,* 332 Pa. 522 [2 A.2d 731, 733]; *Great American Life Ins. Co.* v. *Stephenson,* 176 Okla. 295 [55 P.2d 56, 58]; *Oberlin* v. *Pyle,* 114 Ind.App. 21 [49 N.E.2d 970, 972]; 51 C.J.S. 825, § 219(4); 32 C.J.S. 749, § 821.) The evidence warranted the

inference that defendant intended delivery by Young to be effective.

As we have noted, Young testified to conversations he had with plaintiff. The testimony was admitted over the objection of defendant. She claims error. There was no error. The argument is that the testimony was hearsay. There was evidence that Young was the agent of defendant. ■ Young's testimony of his conversations with defendant was admissible to establish the fact of agency. (2 Cal.Jur.2d 662, § 15.) ■ The fact of agency being established, the testimony of Young and plaintiff, as to their conversations relating to the business entrusted to Young, was admissible as a part of the res gestae. (2 Cal.Jur.2d 881, § 179.)

Defendant says the court erred in failing to make a finding as to the agency of Young to act for her. There was no error. The ultimate facts, that defendant and Young purchased the property and defendant executed the note and deed of trust, were found. ■ The fact of agency is evidentiary. It need not be pleaded nor found. (*Simpson* v. *Bergmann*, 125 Cal. App. 1, 9 [13 P.2d 531]; *House Grain Co.* v. *Finerman & Sons*, 116 Cal.App.2d 485, 489 [253 P.2d 1034]; 2 Cal.Jur. 2d 879, § 178.) ■ It is implicit in the findings made that Young was the agent of defendant. Under such circumstances an express finding of agency was unnecessary. (*Dixon* v. *Eastown Realty Co.*, 105 Cal.App.2d 260, 265 [233 P.2d 138].) Further, it does not appear that defendant made any objection to the findings before they were signed or on a motion for a new trial. ■ In *Tooke* v. *Allen*, 85 Cal.App.2d 230 [192 P.2d 804], this court said (p. 238) : "But we do not find in the record, nor is it suggested, that defendant objected to plaintiff's proposed findings upon that ground before the findings were signed, nor on motion for new trial. The objection urged now is one that could have been obviated on motion for a new trial. When section 634, Code of Civil Procedure, was amended in 1913 to require the service of findings, and again in 1933 to require that they be not signed prior to five days after service, the purpose was to permit of a procedure for the pointing out of defects in the proposed findings, including objections that they were uncertain or not sufficiently specific. The situation presented to us here is one in which we think the objection should be deemed to have been waived by the failure to urge it in the trial court. (*Del Ruth* v. *Del Ruth*, 75 Cal.App.2d 638, 644-645 [171 P.2d 34].) Since the record is silent on the subject, it will be deemed to have been

waived. We must presume the record includes all matters material to a determination of all points on appeal. (Rules on Appeal, rule 52.)''

No purpose would be gained in discussing defendant's other points. They all relate to the sufficiency of the evidence to support the findings and are arguments on the weight of the evidence, with which we are not concerned. The evidence we have related amply supports the findings and the findings support the judgment.

The note provides that if action be instituted thereon, defendant promises to pay such sum as the court may fix as attorney's fees. The judgment awarded plaintiff $836 as attorney's fees for services to the time it was entered. Plaintiff says he should be allowed additional attorney's fees for defending against the appeal. ■■■ The purpose of a provision for attorney's fees in a promissory note is to indemnify the creditor against the necessity of paying an attorney's fee (*Prescott* v. *Grady*, 91 Cal. 518, 522 [27 P. 755]) and to enable him to recover the full amount of his debt without deduction for legal expenses. (59 C.J.S. 1546, § 812(b).) Three hundred dollars is a reasonable amount to be awarded plaintiff as attorney's fees on the appeal.

The judgment is affirmed. Plaintiff is awarded $300 as attorney's fees on the appeal.

Shinn, P. J., and Wood (Parker), J., concurred.