[Civ. No. 25727.   Second Dist., Div. One.   Aug. 20, 1962.]

JOHN D. WILSON et al., Plaintiffs and Respondents, v. RANCHO SESPE, Defendant and Appellant.

RICHARD G. HARDISON et al., Plaintiffs and Respondents, v. RANCHO SESPE, Defendant and Appellant.

(Consolidated Cases.)

Archbald & Halde and Tom Halde for Defendant and Appellant.

Hahn & Hahn, David K. Robinson, Veatch, Thomas, Carlson & Dorsey and Henry F. Walker as Amici Curiae on behalf of Defendant and Appellant.

Philip J. West for Plaintiffs and Respondents.

WOOD, P. J.—These two actions, for damages (to ranch property) resulting from fire, were consolidated for trial. Plaintiffs Wilson, in the first action, are owners of a ranch which is near the ranch known as "Rancho Sespe," on which the fire started. Each of the other plaintiffs in that action (Beekman and Pagenkopp) also owns a ranch which is near the Sespe ranch. Plaintiffs Richard and Jacqueline Hardison, in the second action, also own such a nearby ranch; and the other plaintiffs therein (Leigh and Myrtle Hardison) own a nearby ranch. Stated in another way, five ranches, each of

which is owned individually by a plaintiff or is owned jointly by two plaintiffs, are near the Sespe ranch where the fire started.

The defendants, other than Rancho Sespe, were Mr. Clarkson and his three employees (Arguelles, Cook, and Ferguson) who, prior to the fire, had blasted boulders which were on the Sespe ranch.

In a jury trial the verdict in each action was against defendant Rancho Sespe, a corporation.[1] Judgments, in accordance with the verdicts, were entered. Defendant Rancho Sespe appeals from the judgments.

Appellant contends that the evidence was insufficient to support the verdicts; and that the court erred in giving and in refusing to give certain jury instructions.

Defendant Rancho Sespe, a corporation, owns a 4,500-acre ranch in Ventura County. The northern portion of the ranch is mountainous. "Boulder Creek," which extends (or flows) in a southerly direction through that portion, is a natural course for water that comes from San Cayetano Mountain. In some years there is water in the creek, and during a "good rainy season" there is a lot of water in it. The lowest part of the creek bed (mouth of the creek) is "quite wide," and the creek narrows "as it goes up the canyon" and the banks on each side of the creek are of a height ranging from 10 feet to 30 feet. Boulders are strewn throughout the creek bed— it is estimated there were 50,000 tons of boulders in the creek.

The W. F. Maxwell Company had a contract with the State of California for the construction of a highway near Simi. Defendant Clarkson had a contract with the Maxwell Company to supply rock for that construction project. Since the rock was to be used as "riprap," a requirement of the highway contract was that the rock should be of a certain hardness. Mr. Clarkson knew, by reason of his former transactions with Rancho Sespe, that rock of that specified kind was in Boulder Creek. At various times over a period of 20 years, he had performed work for Rancho Sespe. The president of Rancho Sespe (who was its general manager), the vice-president (who was assistant manager), and the secretary (who was office manager) had been acquainted with Mr. Clarkson about twenty years, and he was known to them as a

[1] In the first action (Wilson et al.) the verdict was also against defendant Arguelles, who had answered in that action. He was not served with process in the other action. All the other defendants in both actions defaulted.

general contractor who did earthmoving work and road construction work. His general reputation with respect to such work was known to them to be satisfactory.

In June 1957 Mr. Clarkson asked Mr. Mills, the vice-president and assistant manager of Sespe, if he might take rocks from the creek bed to fulfill his contract with Maxwell. At that time Clarkson was not performing work for Sespe. Mr. Mills replied that he would check the request with Mr. Lombard, the president. According to Mills' testimony, he discussed the matter with Lombard and they decided to grant the request; that about July 1, 1957, Mills told Clarkson that he might take the rocks ''as an accommodation to him only''; and that it was ''as an accommodation that we were allowing him, as a friend, to come on our property and take these rocks.''

In early July 1957 Clarkson and his employees moved his equipment (which included bulldozers, a crane, and several dump trucks) into the bottom of the creek and began hauling rocks which were to be used as riprap. According to the highway contract, one-fourth of the rocks should be of a size weighing 4 tons or more; one-fourth should weigh between 2 tons and 4 tons; and one-half should weigh less than 2 tons. Although it was permissible under the highway contract to use rocks weighing more than 5 tons, Clarkson was limited by the weight of rocks he could load with the crane. Some of the rocks in the creek were too large for loading. In order to break such large rocks into sizes which could be loaded, Clarkson's employees blasted the rocks by using black powder and a rope fuse. Clarkson showed his employees the manner in which he wanted the blasting done, which was to drill a hole in a rock, put black powder and a fuse in the hole, and ignite the fuse.

On August 13, 1957, just after a rock had been blasted, a fire started in the creek bed, and the Ventura County Fire Department equipment was brought there. The firemen used 700 gallons of water, and remained there one and a half hours while extinguishing the fire. The president or vice-president of Sespe did not know that this fire had occurred. Plaintiff Hardison testified that a few days after August 13, 1957, he asked Mr. Moehl, an employee of Sespe, what had taken place; and that Moehl replied, ''Oh, they had a little fire over there where they were blasting.'' Moehl testified that he did not recall such a conversation.

On August 27, 1957, another fire started in the creek bed

in the area where the blasting was being done. This fire spread to the ranches of the plaintiffs, damaged their property, and was not controlled for several days.

Mr. Cook, one of Clarkson's employees who assisted in blasting, testified that the fire of August 13 started in the course of his work and "from the blasting, I guess"; that on August 27, just before he saw the fire on that day, he had set off an explosion to break a rock; when he saw the fire it was about 50 feet from the place where he was blasting; two other employees were with him when the fire started.

Mr. Mayfield, a member of the Ventura County Fire Department, testified: He went to the Sespe ranch at the times the two fires occurred. The second fire (August 27) was about 150 feet from the place the first fire occurred. Land adjacent to the place where the employees were working—the land just north of that place—was covered with light dry brush. In the creek bed there was "relatively small combustible material." When he arrived there on August 27 the temperature was 97 degrees, and the wind was from the southwest.

Mr. Stone, a witness called by plaintiffs, testified: He is an investigator for the United States Forestry Service and during a period of 10 years he had made investigations to determine the cause of fires. On August 28, 1957, while he was investigating the cause of the fire of August 27, he asked Cook where the fire started and how much time elapsed after the last blast and prior to the time he discovered the fire. Cook pointed to a place and said that was where the fire started, and he pointed to another place and said that was where he had blasted. He said that the fire started immediately after the blast at that place. The distance between those places (where the blast occurred and where he first saw the fire) was about 15 feet. There were indications from ashes, at the place where Cook first saw the fire, that the ground at that place had been covered with dry grass. In his opinion this blasting was highly hazardous for the reason that the black powder fuse, which might still be burning at the time of the explosion, will be blown "in some cases a considerable distance" and when it lands in flammable material something happens. In his opinion the fire started as a result of the blasting. He (witness) told Mr. Lombard (president of Rancho Sespe) that he had determined that the fire started as a result of Clarkson's operation "up on Boulder Creek." In reply thereto, Mr. Lombard "expressed something to the effect that he was not surprised."

In August 1957 the Ventura County Fire Department issued a permit to Arguelles (Clarkson's foreman) authorizing blasting operations on the ranch. The permit provided that, in conducting blasting operations, four men should be present; all inflammable growth within 100 feet of each blast should be cleared away; all roads and trails in the vicinity of the blasting area should be posted; an approved powder magazine should be established; and each blast should be covered with a wet canvas.

Mr. Stone, the fire investigator, testified further that he asked Arguelles (the foreman of Clarkson's employees) the reason he had not followed the stipulation in the blasting permit as a safety precaution. He replied that "they had to gamble a little bit and get by without it."

Mr. Clarkson testified: He had cleared rocks from the creek area on occasions during a period of two or three years prior to the fires, and he had hauled "possibly" 100,000 tons of rocks therefrom. He had been paid "partially" by Sespe for removing the rocks. The rocks which he was removing when the fires occurred were in the creek bed and were more difficult to remove than the rocks he had removed previously. The rocks in the creek bed were "possibly" all the rocks which were left in the area. The work he was doing when the fires occurred was not a continuation of the previous work, but it was the same kind of work and was performed under a contract with Maxwell—not under a contract with Sespe. When he asked Mr. Mills for permission to remove rocks, Mr. Mills told him to get the rocks (from the ranch) wherever he could find them, that there would be no payment by Sespe, and that the manner in which he performed the work would be entirely up to him. He would have ceased operations on the ranch if he had been requested to do so. The officers of Sespe never supervised his work. The work he was doing there in 1957 was in a remote area of the ranch and, so far as he knew, no one from Sespe inspected his work.

Mr. Lombard, president of Rancho Sespe, testified: That when he gave Clarkson permission to take the rocks he understood that Clarkson would carry on blasting operations in the canyon area. He (witness) was aware of the nature of the growth and underbrush in the canyon. Prior to the fire of August 27 he knew that Clarkson was conducting blasting operations. It was his understanding that he could have caused Clarkson to cease operations on the ranch at any time. Prior to August 27 he did not know that there had been a fire on August 13.

Mr. Mills, vice-president of Rancho Sespe, testified that he did not know, prior to August 27, that there had been a fire on August 13.

Richard Hardison, one of the plaintiffs, testified that after the fire the appellant channeled the creek bed and cleared it of large boulders.

Appellant argues, with reference to its contention as to insufficiency of the evidence, that there was no evidence of any negligence on its part, nor of any negligence of Clarkson or his employees which could be imputed to appellant. It argues further that there was no evidence that its officers were negligent in granting permission to remove rocks from the creek or in failing to stop the blasting; or that its officers or employees participated in the rock-removal operations; or that the operations were inherently or intrinsically dangerous; or that appellant's officers knew, or should have known, that the operations were being conducted in a negligent manner; or that appellant controlled, or had a right to control, the operations; or that it received any benefit therefrom.

"No person is permitted by law to use his property in such a manner that damage to his neighbor is a forseeable result." (*Miles* v. *A. Arena & Co.*, 23 Cal.App.2d 680, 683 [73 P.2d 1260].) "[I]f one in possession of land permits a third person to conduct an activity thereon which is highly dangerous unless great care is taken, he may properly be required to exercise constant vigilance to be able to exercise his control over the third person when and if the occasion for it arises." (Rest., Torts, § 318, com. c.) "A possessor of land is subject to liability for bodily harm caused to others outside the land by a structure or other artificial condition thereon, which the possessor realizes or should realize as involving an unreasonable risk of such harm, if . . . (b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or (c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it. . . ." (Rest., Torts, § 364.) The last quotation, hereinabove made, refers to liability for bodily harm, but the legal principle stated therein is applicable also with respect to liability for damage to property.

The jury herein could infer from the evidence that appellant's officers knew, at the time of granting the permission, that rocks would be blasted; that they knew, after the

rock-removal work was commenced, that blasting was done during hot summer months in an area where there was dry brush; and that the officers knew, or should have known, that blasting of rocks under such conditions was a fire hazard. In this connection there was evidence that, at the time of granting the permission, the president of Rancho Sespe understood that rocks would be blasted, and he knew there was dry underbrush and growth in the canyon; and also there was evidence that, within a few days after the first fire, an employee of Sespe knew that a fire had occurred at the place where Clarkson's employees were blasting rocks. At the time of that fire, firemen came with fire department equipment and remained there one and one-half hours while extinguishing the fire. One of Clarkson's employees testified to the effect that the first fire started in the course of his work while blasting rocks, and that the second fire started soon after a blasting explosion and about 50 feet from the place where the blasting was done. In the opinion of the fire investigator, the blasting was highly hazardous and the second fire was caused by the blasting. Clarkson's employees did not comply with the restrictive provisions of the blasting permit—one of his employees said that they had to gamble and get by without complying with it.

The jury could also infer that appellant received a benefit by reason of the removal of rocks from the creek, and that it was intended at the time of granting such permission that such benefit should be received. There was evidence that for several years previously Clarkson had performed work for appellant; and that during two or three years prior to the fires he had removed many thousands of tons of rocks from the creek area, and he had been paid "partially" for the work (inferringly he was paid partly in money and partly by allowing him to take rocks for his own use); that it is probable that the rocks that were in the creek bed, after the prior work was done, were the only rocks left in that area; that after the second fire the appellant removed the remaining large rocks from the creek bed.

It could also be inferred that, at the time of the present rock-removal operations by Clarkson, he was an agent or independent contractor acting in behalf of appellant; that he was negligent in conducting such operations; and that his negligence was a proximate cause of the fire and the damage to plaintiffs' property. The evidence was sufficient to support the verdicts.

Appellant argues that it was error to give an instruction

regarding agency, for the reasons that "agency" was not alleged in the complaints, or raised in the pretrial proceedings, or included in the pretrial order, and there was no evidence to support a recovery of damages on the theory of agency. Appellant also argues further that it was error to give an instruction regarding "independent contractor," for the reason there was no evidence to support an instruction on that theory; that the part of the instruction regarding that subject was confusing and misleading in that it might be construed as advising the jury that liability could be imputed to appellant without a finding that its officers knew that the blasting was intrinsically dangerous; and that the instruction was insufficient for the reason it did not define the words "independent contractor" or "inherently and intrinsically dangerous."

"The fact of agency is evidentiary. It need not be pleaded nor found." (*Hahn* v. *Hahn,* 123 Cal.App.2d 97, 102 [266 P.2d 519].) The complaints alleged that the damage to plaintiffs' property was proximately caused by the negligence of "defendants." According to the pretrial order, some of the issues to be determined were: "(1) The nature of the relationship between defendants Rancho Sespe and Cecil B. Clarkson, including the issue of whether a contractual relationship existed between them or whether Clarkson was a mere licensee. . . . (5) If the defendant Clarkson and his employees were negligent and such negligence was a proximate cause of the fire and the injury to the plaintiffs, may such negligence be imputed to the defendant Rancho Sespe." At the trial, after the attorney for plaintiffs had made his opening statement, the attorney for Sespe made a motion for a nonsuit, on the ground that the opening statement was not a sufficient statement of a cause of action against Sespe. In his argument in support of the motion, the attorney for Sespe said: "It isn't even pled, so far as I recall, that he [attorney for plaintiffs] is contending that Rancho Sespe was a principal and Clarkson was an agent." The attorney for plaintiffs said: "[I]s counsel suggesting that I plead conclusions of law?" The attorney for Sespe replied: "You have got to prove agency." The motion was denied, and thereafter evidence was introduced by plaintiffs and Sespe with respect to the nature of the relationship between Clarkson and Sespe. In his argument to the jury, the attorney for Sespe stated: "Now, Mr. West [attorney for plaintiffs] stated that if there is a principal-agent relationship between the Rancho Sespe and Clarkson on the one hand, if you find Clarkson was negligent,

then you can impute his negligence to the Rancho Sespe. This is correct.'' The attorney for Sespe then argued to the jury with respect to whether a relationship of principal and agency existed between Sespe and Clarkson. [█    It seems that the case was tried on the theory that agency was an issue. The pretrial order, to the effect that an issue was the nature of the relationship between Sespe and Clarkson, was sufficient to include ''agency'' as an issue. It does not appear that appellant was prejudiced because the pretrial order did not include a specific statement that agency was an issue. As above stated, the evidence was sufficient to support a finding that a relationship of principal and agent, or a relationship of employer and independent contractor, existed between Sespe and Clarkson.

█    The said instruction was not confusing or misleading, as asserted by appellant, in that it might be construed as advising the jury that liability could be imputed to Sespe without a finding that Sespe knew that the blasting was intrinsically dangerous. Liability might be imputed to Sespe, on the basis of a relationship of employer and independent contractor, without a finding that Sespe through its officers knew that the blasting was extra-hazardous.    █    '' '[O]ne who employs an independent contractor to perform work which is either extra-hazardous unless special precautions are taken or which is inherently dangerous in any event is liable for negligence on the part of the independent contractor or his servants in the improper performance of the work or for their negligent failure to take the necessary precautions. This broad principle has been applied not only to excavations on private property, but . . . to blasting operations . . . to the use of fire in clearing land. . . .' '' (*Snyder* v. *Southern Cal. Edison Co.,* 44 Cal.2d 793, 800, 801 [285 P.2d 912].) As above indicated, there was evidence from which the jury could find that the blasting, under the circumstances here, was extra-hazardous.

Appellant contends that the court erred in giving an instruction with respect to imputed negligence. At the beginning of that instruction, it was stated in substance that the jury should first determine whether there was negligence on the part of Clarkson's employees, and whether such negligence, if any, was a proximate cause of the damage. Then the instruction stated in substance that if the jury found in the affirmative on those questions, it should then determine whether such negligence should be imputed to Sespe; that

the jury should impute such negligence, if so found, to Sespe, so as to make Sespe liable, if it found that, at the time the fire started, Clarkson, through his employees, was acting as agent for Sespe and within the scope of "their" authority in doing the blasting; that the jury should impute such negligence, if so found, to Sespe, so as to make Sespe liable, if it found that, at the time the fire started, Clarkson, through his employees, was engaged by Sespe as an independent contractor, but in that event only if it found further that the blasting being done by the employees of Clarkson on the property of Sespe, under all the circumstances then present, was inherently or intrinsically dangerous to persons or property outside the property of Sespe, and that Sespe, through its officers or agents, knowingly permitted Clarkson, by his employees, to carry on blasting operations on the property of Sespe; and that unless the jury found that the plaintiffs had sustained the burden of proof under the instructions as to imputing to Sespe the negligence, if any, of Clarkson or his employees, the jury must, on the theory of an agency or of independent contractor relationship, find in favor of Sespe. (The instruction also stated in substance that an agent is a person who, pursuant to an agreement with another, undertakes to perform some service for the other, whether for compensation or gratuitously; and that a test by which to determine whether a person is an agent is to ascertain whether that person was subject to control of the other person and whether the other [latter] person had the right to discharge the [former] person.)

With reference to the alleged error in failing to give an instruction defining the words "independent contractor," the appellant asserts that it offered an instruction which properly defined "this relationship." The instruction so referred to is long and appears on four pages of the clerk's transcript. In that instruction the words "independent contractor" appear several times, but a definition of the term or expression "independent contractor" is not stated therein. The statements therein, regarding those words, are to the effect that in most cases where the independent contractor is negligent the principal is not liable, but this general rule has exceptions, one of which is a situation where the employment is for the performance of extra-hazardous work. █ If appellant desired that a definition of those words be given to the jury, the appellant should have prepared and requested such an instruction. (See *O'Connor* v. *United Railroads*, 168 Cal. 43, 52-53

[141 P. 809].) The said requested instruction which contained the words "independent contractor" was modified by the judge by striking out paragraphs containing those words. The last paragraph stated in substance that the plaintiffs had the burden of proving imputed negligence and that if plaintiff failed to carry that burden with respect to any one of four specifically mentioned issues regarding imputed negligence, the verdict on that subject should be for Sespe. One of those four issues was that of "independent contractor." In other words, the paragraph advised the jury that if plaintiffs did not carry the burden of proving that Clarkson was an independent contractor, the verdict as to imputed negligence should be for Sespe. The paragraph was erroneous for the reason another issue in the case was that of agency. The judge properly refused to give that part of the instruction.

With reference to the other part of appellant's argument regarding the failure to give an instruction defining "inherently and intrinsically dangerous," it appears that appellant submitted an instruction which defined the words "inherently dangerous" and "intrinsic," but did not define the words "intrinsically dangerous." Since those words are commonly understood, it was not necessary to define them in an instruction. The last part of that instruction (the part following the definitions) was to the effect that irrespective of whether the jury found that the operations of Clarkson were inherently or intrinsically dangerous, the mere operation in and of itself did not impose liability upon defendants, and liability attached to Clarkson only if he was negligent and the negligence was the proximate cause of the fire. Such last part of the instruction was not applicable to any factual situation within the evidence—the evidence shows that there was more than "mere operation," there was dry brush nearby, there was failure to comply with the provisions of the permit, and fires occurred. Under the factual circumstances herein, the last part of the requested instruction was argumentative and would tend to confuse the issues. Furthermore, Clarkson was making no contention with respect to the alleged liability on his part—he had defaulted. The court properly refused to give appellant's said instruction regarding those definitions.

The court did not err in giving plaintiff's requested instruction regarding imputed negligence.

Appellant contends that the court erred in refusing to give the following instruction: "A person, who, himself, is exercising ordinary care has a right to assume that others, too,

will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another.'' Before the arguments to the jury were commenced, the judge modified the instruction by striking therefrom the second sentence, and then stated that the instruction as modified would be given. After the arguments were concluded, the judge stated that the instruction as modified would not be given. Appellant states that, in reliance on the judge's statement that the instruction would be given, its counsel made the instruction the basic foundation for his argument on the question of liability, and made several references to it in his argument. Appellant argues that the refusal of the court to give the instruction was a violation of section 607a of the Code of Civil Procedure, was tantamount to leading its counsel into a trap, and that as a result appellant was not accorded a fair trial. The part of section 607a to which appellant refers provides: ''Before the commencement of the argument, the court, on request of counsel, must: (1) decide whether to give, refuse, or modify the proposed instructions; (2) decide which instructions shall be given in addition to those proposed, if any; and (3) advise counsel of the instructions to be given.'' The instruction, in its original form or as modified, was not applicable herein. The second sentence in the original instruction seems to be a reference to alleged negligence on the part of plaintiffs. Since there was no evidence that any plaintiff was negligent, the instruction would tend to confuse the issues. Apparently after the judge had said that the instruction would be given, he observed that it was erroneous. In view of the factual situation herein as to lack of negligence on the part of any plaintiff, it cannot be said that the act of the judge in changing his announced intention as to giving the instruction was prejudicial to appellant.

Appellant contends that the judge while reading an instruction, on the subject of proximate cause, misread the word ''must,'' appearing therein, by pronouncing the word ''may'' (instead of must). Appellant had requested the giving of an instruction, a part of which was as follows: ''. . . To give rise to liability, however, any such proximate cause must have consisted of negligent conduct.'' Appellant asserts that the judge in proceeding to read that sentence misread the word ''must,'' appearing therein, by pronouncing the word ''may.''

The reporter's transcript reflects that the judge, in proceeding to read the instruction, used the word "may" instead of "must." The transcript also reflects that after the cause had been submitted to the jury, the attorney for Sespe stated to the judge that he believed that the judge "misread" the word "must," by pronouncing the word "may." The judge stated that he would read the instruction to see if he "unconsciously had any misinterpretation there." Meanwhile, the jury was deliberating. Later, the jury returned to the courtroom and requested information with respect to liability. The judge then reread certain other instructions, wherein it was stated: (1) "Only if you shall find . . . that the defendant Rancho Sespe was negligent and that such negligence proximately caused the fire and damages of which plaintiffs here complain shall you find in favor of the plaintiffs and against the defendant Rancho Sespe on the question of the negligence of Rancho Sespe itself"; (2) "Before determining the issue of whether or not the negligence of Cecil B. Clarkson and his employees shall be imputed to defendant Rancho Sespe you must have found, as I just stated, that Cecil B. Clarkson and his employees were negligent and their negligence proximately caused plaintiffs to suffer damages."      It thus appears that, even if the judge misread the word "must" in the questioned instruction, the jury was advised in other instructions that it was necessary to find that the negligence of Sespe or Clarkson was a proximate cause of plaintiffs' damages in order to render a verdict against Sespe. Under the circumstances, if the judge did pronounce the word "may," it does not appear that Sespe was prejudiced thereby.      Furthermore, the questioned instruction, which contains the word "must," bears the endorsement of the judge thereon that it was given. After the judge's attention was called to the alleged misreading, he made no change in his endorsement on the instruction. It is not the function of this court to decide the question of fact involved. It will be assumed that the judge's endorsement is correct.

      Appellant contends that the judge abused his discretion (1) in not advising counsel of a written inquiry, which was submitted to him by a juror, with respect to the default of Clarkson; and (2) in failing to give an instruction, requested by appellant, to the effect that the defaults of Clarkson, Cook, and Ferguson had been entered, and that the jury should assess damages against said defendants. The written inquiry, which the bailiff handed to the judge at the

request of a juror, was as follows: "When announcing the case, the court stated that the defendants were both the Rancho Sespe and Clarkson. Then, Clarkson was defaulted and Rancho Sespe was the defendant. There were no conditions mentioned in reference to the default and if Clarkson was relieved of any claims in the original claim. If the details were given in this default, it would clear this up." Appellant argues to the effect that the inquiry indicates that the jurors believed that Clarkson had been relieved of all liability, and that it might well be that the verdicts were rendered against Sespe so that plaintiffs might have recourse against someone for their damages. The judge should have notified the attorneys for the parties regarding the inquiry. The failure to do so, however, did not constitute prejudicial error. Appellant's argument with respect to the basis for the verdicts is conjectural. The judge was not required to give an instruction regarding the defaults.

The judgments are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 17, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1962.