428 P.2d 50

Gladys F. VAUGHN, Plaintiff-Respondent,

v.

George E. VAUGHN, Defendant-Appellant.

No. 9823.

Supreme Court of Idaho.

May 9, 1967

Elam, Burke, Jeppesen & Evans, Boise, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent.

McFADDEN, Justice.

Gladys F. Vaughn, plaintiff-respondent, instituted this action on a promissory note, alleging its execution in her favor and delivery to her by George E. Vaughn, defendant-appellant, in the face amount of $3,000, payable monthly on the 1st of each month in installments of $50 each. The note also provided that "all installments of principal shall bear interest at the rate of 6% from the due date thereof  *  *  *," and also contained an acceleration clause which provided in event of non-payment on the due date of any installment, the maker pay reasonable attorneys' fees in case of action for its collection. Plaintiff alleged that only $75 principal payments had been made; that she had retained an attorney to represent her; that she had agreed to pay a reasonable attorney's fee, and she prayed for judgment for balance owing, with reasonable attorney's fee.

By his answer, defendant alleged nondelivery of the note and that it was barred by the statute of limitations. As affirmative defenses he alleged that the note was obtained by coercion, duress and fraud; he also alleged lack of consideration for the note. The trial court found against defendant and entered judgment for plaintiff in the amount of $3,593.81, principal and interest, plus $1000 attorney's fees, from which judgment this appeal was perfected.

To appreciate defendant's position on this appeal, it is necessary to review the facts presented at the trial. The plaintiff and defendant were married in 1945, which marriage was dissolved by a decree of divorce in February, 1959, obtained by the plaintiff. After their marriage they lived together in Boise until 1951, during which year defendant moved to Lewiston, Idaho, while plaintiff continued her residence in Boise. The next year defendant moved to Billings, Montana, and thereafter lived in various locations in Montana and North Dakota, working as a traveling salesman. The defendant returned to Idaho only incident to his employment as a traveling salesman, and to Boise on a few occasions only for brief periods of time. Plaintiff testified that she last saw the defendant in 1955, when he came to Boise to attend his mother's funeral, and on other occasions between 1951 and 1955 plaintiff saw the defendant only when he was in Boise visiting other members of his family. She also testified that from 1951 through 1957 she offered on several occasions to join her husband and reside with him but always he refused. The defendant, however, testified in substance that he had asked his wife to live with him, but that she refused, preferring to remain in Boise continuing her employment with a telephone company.

During the period of 1951 through 1957, a joint bank account previously established by the parties remained in effect. The plaintiff kept this account active by making deposits and presenting her checks for payment, the monthly statements being sent to her. Defendant testified he deposited his

earnings in this account, and further, that his withdrawals never exceeded his own deposits. The plaintiff testified that during this period the defendant requested loans of money from her and that on those occasions she used moneys from her payroll check or borrowed moneys from banks, finance companies or from the credit union of a telephone company and forwarded him such moneys as he requested. Plaintiff testified she made such "loans" by sending a check or a money order. No written record of the exact amount so advanced by the plaintiff to the defendant was kept.

Sometime in 1957, plaintiff discovered that her husband was living with another woman in Montana. She had her Idaho attorney contact a Montana attorney who in turn negotiated with the defendant, which negotiations culminated in execution of the promissory note involved in this action and a document entitled "Release." The Montana attorney testified the defendant acknowledged owing plaintiff sums of money loaned to him by plaintiff, and defendant suggested such obligations be settled for the amount of the note.

The "Release" dated July 1, 1958, was acknowledged June 27, 1958, by the plaintiff in Idaho, and June 30, 1958, by the defendant in Montana. The defendant testified that he executed the promissory note a day or two prior to execution of this release. The release recited in its preamble the fact of the parties' marriage, their separation and that during the time of their separation plaintiff had loaned defendant from her separate property substantial sums of money, none of which had been repaid; that the parties desired to compromise and settle their claims and that the plaintiff contemplated prosecution of a divorce action against defendant. This release then recited:

"* * * for and in consideration of the making by the said George E. Vaughn, and the delivery thereof to the said Gladys F. Vaughn, of the promissory note of even date herewith * * *, it is understood and agreed * * *:

"That the said Gladys F. Vaughn does hereby release the said George E. Vaughn from any and all claims which she has against the said George E. Vaughn, by reason of the above mentioned loans, or otherwise.

"That the said George E. Vaughn does hereby agree that he will not contest or in any way hinder or delay the said proposed divorce action, * * *."

The release continued with an agreement on the part of the plaintiff that she would pay all costs of the divorce, if it was not contested, and defendant would not hinder or delay the divorce action.

The defendant contends that the trial court erred: in finding that the note was executed for valuable consideration and in finding that the release and the note were separable; in not finding the plaintiff's income from 1951 to 1957 was community property, and therefore, could not constitute valid consideration for the execution of the note; in finding that the execution and delivery of the note was the voluntary act of the defendant.

I.C. § 27–201 establishes a presumption of consideration for a negotiable instrument; I.C. § 29–103 provides: "A written instrument is presumptive evidence of a consideration." The promissory note involved here recites "for Value Received, I promise to pay to Gladys F. Vaughn, * * * the sum of Three Thousand Dollars * * *." The defendant, in his answer to the complaint, alleged lack of consideration of the note as an affirmative defense and thus he was faced with the burden of proof on that issue. I.C. § 29–104; Colorado Milling & Elevator Co. v. Proctor, 58 Idaho 578, 76 P.2d 438. The trial court found that the note was executed for valuable consideration. This finding is sustained by the evidence by reason of the presumptions in favor of consideration, the recital of consideration in the note itself and the testimony of plaintiff's Montana attorney that the defendant acknowledged he had borrowed some money from his wife over a period of time. The trial court's finding

that the note was executed for valuable consideration carries with it the necessary conclusion that the defendant failed in his burden of proof of lack of consideration. Dahlberg v. Johnson's Estate, 70 Idaho 51, 211 P.2d 764, 11 A.L.R.2d 1365. Aside from defendant's contention that the plaintiff's earnings were community property and hence not subject to such a loan (which contention is hereinafter discussed), our attention has not been directed to any evidence sustaining the defendant's assertion of lack of consideration.

■ Concerning the claimed error by the trial court in finding the note and release were separable and that the illegality of the release did not taint the note, the trial court by a memorandum opinion held that the provisions of the release regarding defendant's agreement not to "contest * * * hinder or delay the said proposed divorce action" did not affect the consideration for the promissory note. Here the defendant, as the promisor, agreed to pay $3,000 to the plaintiff, the promisee; likewise the defendant, again the promisor, agreed not to "contest * * * hinder or delay" the proposed divorce action, with the promise again going to the plaintiff. This is unlike cases cited by the defendant [1] where the promisor, who agrees not to defend is the recipient of a payment or promise to pay by the other party in exchange for such agreement. The "Release" agreement was primarily for the purpose of settling financial differences between the two parties, and in settlement of all financial obligations owing by the defendant to the plaintiff. Under the facts presented here, the alleged illegal portion of the release was separable from the principal objective of the agreement. See: Hill v. Schultz, 71 Idaho 145, 227 P.2d 586 (1951).

■ Defendant further argued that plaintiff's earnings were community property and that since defendant owned half of those earnings, they were not the proper

subject of a loan by the wife to the husband. However, it is acknowledged by all parties that from 1951 until the time of the divorce the parties did not live with each other. At most, between 1951 and 1955, they were together for only a few short visits; the last time plaintiff saw the defendant was in 1955. I.C. § 32–909 states: "The earnings and accumulations of the wife * * *, while she is living separate from her husband are the separate property of the wife." The defendant in construing this provision would require, in addition to the fact that the wife is living separate from the husband, the further requirement that the "separation" be accompanied with domestic infelicity or a parting in "bad blood," quoting from Brockelbank, The Community Property Law of Idaho, 1962 Ed., p. 113. Defendant argues that there was never any real breach of the marital relationship during the period plaintiff advanced moneys to the defendant. The quotation from Professor Brockelbank's article discusses the holdings of specific cases. Later on, at Page 114, he reasons:

"It is unlikely too that many would recommend that accretions continue to flow into a common fund from spouses who have separated on a permanent basis. When there is no longer a will to union it seems unrealistic to continue this fictitious partnership merely because the legal tie of marriage has not been severed.

"As to the question whether the result should be varied when the separation has been caused by the fault of one of the spouses, opinions will differ. 'Fault' assumes one spouse is 'right' and the other spouse is 'wrong.' Anyone engaged extensively in divorce cases knows that this is fiction. And it is now almost a decade and a half since we have provided for a divorce without fault. [I.C. § 32–610] The theory here is that when the parties have, by their own ac-

1. See Holder v. Holder, 95 Or. 180, 185 P. 241, 187 P. 604 (Or.1919); Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731, 18 A.L.R.2d 1100 (1950).

tions, severed the marriage tie in fact, the court should sever the legal tie. By parity of reasoning, if the parties have, by their own actions, ceased to have a common life and a common goal why should we insist that their earnings continue to fall into a common fund that they will share."

While the record may not show actual "bad blood" between the parties, nevertheless the parties had reached a point in their marital life when each was going his or her own way without regard to the obligations of one for the other, and their separation had developed into a permanent one. It is clear that the parties established a status of separation within the purview of that section.

Although defendant asserts the trial court erred in finding that the execution and delivery of the note was the voluntary act of the defendant, such assignment of error is neither supported by citation of authority nor argued. See: Sup.Ct. Appellate Rule 41. Arnold v. Splendid Bakery, 88 Idaho 455, 401 P.2d 271 (1965). Moreover, the deposition of the Montana attorney, who represented the plaintiff in the negotiations leading to the execution of the promissory note, supports such finding. Durfee v. Parker, 90 Idaho 118, 410 P.2d 962 (1965); Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966).

Plaintiff by motion duly served and filed herein, seeks additional attorneys' fees in defending this appeal. The promissory note provides for reasonable attorneys' fees in the event suit be brought to enforce the note. The purpose of such a contractual provision in the note "is to indemnify the creditor against the necessity of paying an attorney's fee * * * and to enable him to recover the full amount of his debt without deduction for legal expenses." Hahn v. Hahn, 123 Cal.App.2d 97, 103, 266 P.2d 519, 523 (1954). Although several jurisdictions have held in similar situations that attorneys' fees should not be allowed for successfully defending an appeal on various grounds, i. e., that the contract was merged in the judgment or that the fees were not within the contemplation of the parties (See: Annot.: 52 A.L.R.2d 863 at 871), the more recent and in our opinion the better reasoned cases allow such fees on appeal. It is our conclusion that the plaintiff is entitled to fees for the services of her attorneys in defending this appeal. Otherwise, the amount of her recovery on the defendant's contractual obligation would be reduced, contrary to the purpose of the contractual provision for payment of attorneys' fees in the event of suit brought to enforce the note. Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636 (1961); Anderson v. Hiatt, 181 Cal.App.2d 9, 4 Cal.Rptr. 858 (Cal.App.1960). Hahn v. Hahn, 123 Cal. App.2d 97, 266 P.2d 519 (Cal.App.1954); Puget Sound Mutual Savings Bank v. Lillions, 50 Wash.2d 799, 314 P.2d 935 (1957). Cirimele v. Shinazy, 134 Cal.App.2d 50, 285 P.2d 311, 52 A.L.R.2d 860 (Cal.App. 1955). Annot.: 52 A.L.R.2d 863; 17 Am. Jur.2d Contracts § 292, p. 708.

Having considered plaintiff's motion for additional attorneys' fees, it is adjudged that $500 is a reasonable fee to be allowed to her counsel on this appeal. It is therefore ordered upon remittitur, judgment against defendant in plaintiff's favor be amended by addition thereto of the sum of $500.

Judgment in all other respects is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and SPEAR, JJ., concur.